ISABELLE L. ORD (Bar No. 198224)
isabelle.ord@dlapiper.com
ELIZABETH C. CALLAHAN (Bar No. 323510)
elizabeth.callahan@dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Tel: 415.836.2500
Fax: 415.836.2501

ALEXANDER E. WOLF (Bar No. 299775)
alexander.wolf@dlapiper.com
**DLA PIPER LLP (US)**
2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, CA 90067
Tel: 310.595.3000
Fax: 310.595.3300

Attorneys for Defendants
JUST BRANDS USA, INC., JUST BRANDS, INC.,
and SSGI FINANCIAL SERVICES, INC.
*[Additional Counsel Listed on Signature Page]*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL RODRIGUEZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JUST BRANDS USA, INC., JUST BRANDS, INC., and SSGI FINANCIAL SERVICES, INC.,<br><br>Defendants. | CASE NO. 2:20-CV-04829-ODW-PLA<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STAY THE ACTION**<br><br>Date:     January 25, 2021<br>Time:     1:30 p.m.<br>Courtroom: 5D<br>Judge:    Hon. Otis D. Wright II |

EAST\177576489.1

1

## NOTICE OF MOTION AND MOTION

2

TO PLAINTIFF AND ALL ATTORNEYS OF RECORD:

3       PLEASE TAKE NOTICE that on January 25, 2021 at 1:30 p.m., or as soon

4   thereafter as this matter may be heard before the Honorable Otis D. Wright, II, in

5   Courtroom 5D of this Court, located at 350 West 1st Street, Los Angeles, CA

6   90012, defendants Just Brands USA, Inc. ("Just Brands USA"), Just Brands, Inc.

7   ("Just Brands"), and SSGI Financial Services, Inc. ("SSGI") (collectively,

8   "Defendants") will and hereby do move this Court for an order to stay the action.

9       First, this action must by stayed under the primary jurisdiction doctrine in

10  light of the Food and Drug Administration ("FDA") issuing draft guidance that will

11  likely establish a new regulatory framework for cannabidiol (known as "CBD"),

12  an ingredient in products like those at issue here, and also given regulatory

13  developments in the States of California and Florida.  Second, the Federal Food,

14  Drug, and Cosmetic Act ("FDCA") gives the FDA jurisdiction to subject CBD

15  products to a comprehensive regulatory scheme, and Section 297D(c) of the 2018

16  Farm Bill expressly reserved the regulatory oversight of hemp consumables under

17  the FDCA to the FDA.  7 U.S.C. § 1639r(c); *see Snyder v. Green Roads of Fla.*

18  *LLC*, 430 F. Supp. 3d 1297, 1308 (S.D. Fla. 2020) (the 2018 Farm Bill "explicitly

19  recognized the FDA's authority to regulate products . . . under the FDCA") (quoting

20  *Colette v. CV Scis., Inc*., 2020 WL 2739861, at *5 (C.D. Cal. May 22, 2020)).

21  Third, the regulation of CBD products requires both the FDA's expertise and

22  uniformity in administration to prevent inconsistent rulings and allow for judicial

23  economy and efficiency.  *Colette*, 2020 WL 2739861 at *4 ("[T]he number of CBD

24  class actions currently pending in the federal district courts makes clear the danger

25  of inconsistent adjudications.").

26      This Motion is based on this Notice of Motion and Motion, the attached

27  Memorandum of Points and Authorities, Defendants' Request for Judicial Notice in

28

i

///

support of the Motion filed concurrently herewith, the record in this action, and any evidence and argument that may be presented at or before the hearing.

Concurrently with this Motion, Defendants move to dismiss the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) because, *inter alia*, Plaintiff lacks Article III standing to assert claims based on products that he did not purchase; Plaintiff cannot represent a putative nationwide class as Defendants are not subject to personal jurisdiction in California for non-California putative class members' claims; Plaintiff's express warranty, unjust enrichment, and fraud claims are defective because the FAC fails to state which state's law governs these claims; and Plaintiff's unjust enrichment, Unfair Competition Law, and False Advertising Law claims for equitable restitution fail because Plaintiff has not (and cannot) allege inadequate remedies at law.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place by telephone on November 12, 2020, and involved Plaintiff's attorney Alex Straus and Defendants' attorneys Isabelle L. Ord and Alexander E. Wolf. The parties were unable to reach an informal resolution and Plaintiff's counsel stated Plaintiff would oppose the Motion.

Dated: November 23, 2020      **DLA PIPER LLP (US)**

By: /s/ *Isabelle L. Ord*
       ISABELLE L. ORD
       ALEXANDER E. WOLF
       ELIZABETH C. CALLAHAN
       Attorneys for Defendants
       JUST BRANDS USA, INC., JUST
       BRANDS, INC., and SSGI FINANCIAL
       SERVICES, INC.

       STEFANIE J. FOGEL (*Pro Hac Vice*)

ii

1

stefanie.fogel@dlapiper.com

2

**DLA PIPER LLP (US)**

33 Arch Street, 26th Floor

3

Boston, MA 02110

Tel: 617.406.6000

4

Fax: 617.406.6100

5

6

COLLEEN GULLIVER (*Pro Hac Vice*)

colleen.gulliver@dlapiper.com

7

**DLA PIPER LLP (US)**

1251 Avenue of the Americas

8

New York, NY 10020

9

Tel: 212.335.4500

Fax: 212.335.4501

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO STAY ACTION
CASE NO. 2:20-CV-04829

EAST\177576489.1

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ..................................................................................1

II.   FACTUAL BACKGROUND ................................................................2

    A.    Overview of the Case and Procedural History....................................2

    B.    Hemp Legalization, and Active and Impending Hemp-CBD
           Regulation and Guidance. ....................................................................2

III.  ARGUMENT ........................................................................................7

    A.    The Primary Jurisdiction Doctrine Requires a Stay............................7

        1.    The FDA and State Regulators Will Decide Material
               Issues Affecting This Case. .......................................................8

        2.    The FDA Has Jurisdiction Over and Will Subject CBD
               Products to a Comprehensive Regulatory Scheme Under
               the FDCA. ................................................................................10

        3.    The Regulation of CBD Products Requires Both the
               FDA's Expertise and Uniformity in Administration. ..............11

IV.   CONCLUSION ...................................................................................13

NOTICE OF MOTION AND MOTION TO STAY ACTION
CASE NO. 2:20-CV-04829

EAST\177576489.1

1    CASES

2    *Ahumada v. Global Widget LLC*,
3        No. 19-CV-12005, 2020 WL 5669032 (D. Mass. Aug. 11, 2020).....9, 10, 11, 12

4    *Astiana v. Hain Celestial Grp., Inc.*,
5        783 F.3d 753 (9th Cir. 2015) ................................................................. 1

6    *Clark v. Time Warner Cable*,
7        523 F.3d 1110 (9th Cir. 2008) ............................................................. 7

8    *Colette v. CV Scis., Inc.*,
         No. 19-CV-10227, 2020 WL 2739861 (C.D. Cal. May 22, 2020) ....9, 10, 11, 12
9

10   *DaSilva v. Infinite Prod. Co.*,
         No. 19-CV-10148 (C.D. Cal. Nov. 27, 2019) ..................................... 12

11   *Davis v. cbdMD, Inc.*,
12       No. 19-CV-10241 (C.D. Cal Dec. 3, 2019) ........................................ 12

13   *Figy v. Lifeway Foods, Inc.*,
14       No. 13-CV-04828, 2014 WL 1779251 (N.D. Cal. May 5, 2014) ...................... 8

15   *Funke v. Sorin Grp. USA, Inc.*,
16       147 F. Supp. 3d 1017 (C.D. Cal. 2015) ............................................... 3

17   *GCB Commc'ns, Inc. v. U.S. South Commc'ns, Inc.*,
18       650 F.3d 1257 (9th Cir. 2011) ............................................................. 7

19   *Gentry v. Cellco P'ship*,
         No. 05-CV-07888, 2006 WL 6927883 (C.D. Cal. Mar. 22, 2006).............. 11, 12
20

21   *Glass v. Global Widget, LLC, d/b/a/ Hemp Bombs*,
         No. 19-CV-01906, 2020 WL 3174688 (E.D. Cal. June 15, 2020)...................... 9
22

23   *Glass v. Global Widget, LLC, d/b/a/ Hemp Bombs*,
         No. 19-CV-01906 (E.D. Cal. Sept. 18, 2019) ..................................... 12

24   *Greenfield v. Yucatan Foods, L.P.*,
25       18 F. Supp. 3d 1371 (S.D. Fla. 2014)............................................... 10

26   *Lopez v. Miami-Dade Cty.*,
27       145 F. Supp. 3d 1206 (S.D. Fla. 2015)............................................... 7

28

NOTICE OF MOTION AND MOTION TO STAY ACTION
CASE NO. 2:20-CV-04829

*Peviani v. Hostess Brands, Inc.*,
    750 F. Supp. 2d 1111 (C.D. Cal. 2010) ................................................ 12

*Pfister v. Charlotte's Web Holdings*,
    No. 20-CV-00418, ECF No. 43 (N.D. Ill. Aug. 11, 2020) ..................... 9, 10, 12

*Snyder v. Green Roads of Fla. LLC*,
    430 F. Supp. 3d 1297 (S.D. Fla. 2020) ................................ 7, 9, 10, 11, 12

*Snyder v. Green Roads of Fla. LLC*,
    No. 19-CV-62342 (S.D. Fla. Sept. 19, 2019) ..................................... 12

*Syntek Semiconductor Co., Ltd. v. Microchip Tech, Inc.*,
    307 F.3d 775 (9th Cir. 2002) .............................................................. 7

**STATUTES AND OTHER AUTHORITIES**

7 U.S.C. § 1639(o)(1) .................................................................................. 3

7 U.S.C. § 1639r(c) ................................................................................ 3, 10

21 U.S.C. § 301, *et seq.* ............................................................................. 3

21 U.S.C. § 413 ........................................................................................... 5

Pub. L. No. 115-334, 132 Stat. 4908–11 ..................................................... 2

Fla. Stat. § 500.01, *et seq.* ....................................................................... 6

Fla. Stat. § 581.217(7) ................................................................................ 8

Fla. Admin. Code, Rule 5K-4.034(6) ...................................................... 6, 8

NOTICE OF MOTION AND MOTION TO STAY ACTION
CASE NO. 2:20-CV-04829

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendants move to stay this action under the primary jurisdiction doctrine because the labeling and testing of certain cannabidiol ("CBD") products is currently within the purview of the Food and Drug Administration ("FDA"). This case is like at least seven putative class actions currently pending nationwide that challenge the labeling and testing of CBD products. Courts have already stayed five of those actions under the primary jurisdiction doctrine to allow time for the FDA to finalize and issue its guidance.

Here, Plaintiff Miguel Rodriguez ("Plaintiff") claims the labels on JustCBD branded products ("Products") do not accurately portray their amount of CBD content, based on unspecified testing of fifteen such Products—only one of which Plaintiff purchased himself. But the FDA has jurisdiction over consumable products containing CBD, and it is actively developing guidance governing the testing and labeling of CBD products. Moreover, both California and Florida—the two states potentially implicated by Plaintiff's claims—have developed and are in the process of implementing regulations for CBD products.

The need for specialized expertise in the regulation of CBD products requires a stay of this action under the primary jurisdiction doctrine. This approach will allow the FDA to address relevant regulatory issues first. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (the doctrine "permits courts to determine that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority"). To determine whether the doctrine applies, courts must consider (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that

1

1  ///

2  (4) requires expertise or uniformity in administration. *Id.* All of these factors weigh

3  in favor of a stay here.

4        The need to wait for FDA regulatory guidance is heightened here because

5  there is a substantial risk of inconsistent rulings as courts across the country address

6  the seven currently pending cases.  Guidance is expected soon, as the FDA has

7  already submitted draft guidance on the development of CBD-containing drugs and

8  a proposed enforcement policy for review.  As such, there is little risk of an

9  unreasonably lengthy stay or prejudice to Plaintiff.  For these reasons, the Court

10  should exercise its discretion and stay this action based on the primary jurisdiction

11  doctrine.

12  **II.    FACTUAL BACKGROUND**

13        **A.    <u>Overview of the Case and Procedural History</u>**

14        Plaintiff filed the First Amended Complaint ("FAC") on October 26, 2020.

15  Plaintiff alleges that he is a California resident and purchased four Products over a

16  four-month period:  Signature CBD Cartridges in the flavors "Pineapple Express"

17  and "Northern Lights" in October 2018, and CBD Gummies and JustPets Dog

18  Treats in March 2019.  (FAC ¶ 5).  Plaintiff's counsel commissioned testing on

19  fifteen Products, although Plaintiff alleges a purchase of only one—the JustPets Dog

20  Treats.  (*Id.* ¶ 20).  The testing purportedly showed that those products contained a

21  lower quantity of CBD than indicated on the product labels.  (*Id.*).  While Plaintiff

22  seeks to predicate his claim on this purported testing, he does not attach the testing

23  to his Complaint nor describe the testing or the methodology employed.  (*See id.*

24  ¶¶ 2, 20).

25        **B.    <u>Hemp Legalization, and Active and Impending Hemp-CBD</u>**

26             **<u>Regulation and Guidance.</u>**

27        Almost two years ago, in December 2018, the federal government legalized

28

1    hemp containing no more than 0.3 percent THC on a dry weight basis.  Agricultural

2    Improvement Act of 2018, Pub. L. No. 115-334, 132 Stat. 4908–11 (the "2018 Farm

3    Bill").  In doing so, the federal government preserved the FDA's authority to

4    regulate hemp products—including their product labeling—under the Federal Food,

5    Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.* ("FDCA").  *See* 7 U.S.C.

6    § 1639r(c).[1]

7         The federal statutory definition of "hemp" includes cannabinoids, which are

8    compounds of the hemp plant that include CBD—an ingredient in the products at

9    issue in this case.  *See* 7 U.S.C. § 1639o(1).  The FDA has acknowledged that it is

10   responsible for oversight of hemp and hemp-derived CBD products and that it

11   intends to take action to regulate them.  (*See* Exs. 2, 3).[2] At both the federal and

12   state level, substantial efforts are ongoing to create CBD regulations and guidance.

13        Specifically, in the last twenty-three months, the FDA has taken the following

14   steps towards CBD regulation and guidance:

15        (1) forming an agency task force to develop the approach to CBD policy and

16   regulation (*see* Ex. 1);

17   _____

18   [1] *See also* Ex. 1, U.S. Food & Drug Admin., *Senate Testimony of Amy Abernethy* (July 25, 2019),
     *available at* https://www.fda.gov/news-events/congressional-testimony/hemp-production-and-
19   2018-farm-bill-07252019 ("The 2018 Farm Bill explicitly preserved FDA's authorities over hemp
     products.").  The Court may take judicial notice of public FDA records.  *See, e.g.*, *Funke v. Sorin
20   Grp. USA, Inc.*, 147 F. Supp. 3d 1017, 1025 (C.D. Cal. 2015) (taking judicial notice of a public
     document available on the FDA website, "whose accuracy cannot reasonably be questioned").
21
22   [2] In a May 2019 statement, the FDA's Commissioner stated: "The regulation of a product like
     CBD is complex and touches almost every aspect of FDA's authority."  Ex. 2, U.S. Food & Drug
23   Admin., *FDA Acting Commissioner's Remarks to the 2019 FDLI Annual Conference*, at 4 (May 2,
     2019), *available at* https://www.fda.gov/news-events/speeches-fda-officials/fda-acting-
24   commissioners-remarks-2019-fdli-annual-conference-05022019; *see also* Ex. 3, U.S. Food &
     Drug Admin., Consumer Update, *What You Need to Know (and What We're Working to Find Out)
25   About Products Containing Cannabis or Cannabis-derived Compounds, Including CBD* (last
     updated March 5, 2020), *available at* https://www.fda.gov/consumers/consumer-updates/what-
26   you-need-know-and-what-were-working-find-out-about-products-containing-cannabis-or-cannabis
     ("The FDA is evaluating the regulatory frameworks that apply to certain cannabis-derived
27   products . . . including whether and/or how the FDA might consider updating its regulations, as
     well as whether potential legislation might be appropriate.").
28

(2) holding a public hearing on May 31, 2019 to "obtain scientific data and information about the safety, manufacturing, labeling, and sale of [CBD] products" (*see* Ex. 4[3]);

(3) conducting a public comment period to solicit additional scientific data (Ex. 4; *see also* Ex. 1);

(4) reporting in June 2020 that it had made "substantial progress" on CBD regulations, stating "[w]e are working toward a goal of providing additional guidance" and "[a]s part of our work, the FDA continues to explore potential pathways for various types of CBD products to be lawfully marketed" (*see* Ex. 5[4]);

(5) issuing a July 8, 2020 report, in response to a Congressional directive, describing the results of its study on the extent to which there is mislabeling and adulteration of CBD products currently in the market (*see* Ex. 6[5]);

(6) issuing draft guidance on July 21, 2020 regarding clinical research and the development of cannabis-based drugs (*see* Ex. 7[6]); and

_____

[3] Ex. 4, U.S. Food & Drug Admin., *Scientific Data and Information About Products Containing Cannabis or Cannabis-Derived Compounds; Public Hearing; Request for Comments*, 84 Fed. Reg. 12969 (Apr. 3, 2019).

[4] Ex. 5, Elaine Watson, *FDA Says It's Made "Substantial Progress" on CBD Regs; CV Sciences Weighs in on Food vs. Pharma Path; Man Sues CBD Firm After Failing Drugs Test*, FOODNAVIGATOR-USA.com (June 5, 2020), *available at* https://www.foodnavigator-usa.com/Article/2020/06/05/FDA-says-it-s-made-substantial-progress-on-CBD-regs-CV-Sciences-weighs-in-on-food-vs-pharma-path-man-sues-CBD-firm-after-failing-drugs-test.

[5] Ex. 6, U.S. Food & Drug Admin., *Report to the U.S. House Committee on Appropriations and the U.S. Senate Committee on Appropriations: Sampling Study of the Current Cannabidiol Marketplace to Determine the Extent That Products are Mislabeled or Adulterated, Report in Response to Further Consolidated Appropriations Act, 2020* (July 8, 2020), *available at* https://hempindustrydaily.com/wp-content/uploads/2020/07/CBD-Marketplace-Sampling_RTC_FY20_Final.pdf.

[6] Ex. 7, U.S. Food & Drug Admin., *FDA In Brief: FDA Issues Draft Guidance to Encourage Cannabis-Related Clinical Research* (July 21, 2020), *available at* https://www.fda.gov/news-events/fda-brief/fda-brief-fda-issues-draft-guidance-encourage-cannabis-related-clinical-research. In a supplement to the guidance, the FDA stated that it "and many stakeholders have concerns about marketed products that contain CBD, including concerns about potential contamination and

4

EAST\177576489.1

(7) the next day, on July 22, 2020, submitting a CBD enforcement policy, titled "Cannabidiol Enforcement Policy; Draft Guidance for Industry," to the White House Office of Management and Budget (*see* Ex. 9[7]).

As noted above, Congress is applying substantial pressure on the FDA to accelerate its development of CBD regulations, including by directives associated with a recently enacted appropriations bill. (*See* Ex. 10[8]).  As are other entities.  On November 14, 2019, the Consumer Healthcare Products Association submitted a citizen petition, which requested that the FDA establish a regulatory pathway to market CBD dietary supplements.  (*See* Ex. 11[9]).  On June 16, 2020, the Council for Responsible Nutrition likewise submitted a petition to request that the FDA regulate CBD as a dietary supplement.  (*See* Ex. 12[10]).

Most recently, on September 4, 2020, House Bill 8179 was introduced, which proposes to make hemp, cannabidiol derived from hemp, and any other ingredient derived from hemp lawful for use under the FDCA as a dietary ingredient in a

---

[*...continuation of footnote 6*] inaccurate or misleading labeling."  Ex. 8, U.S. Food & Drug Admin., *Cannabis and Cannabis-Derived Compounds: Quality Considerations for Clinical Research; Draft Guidance for Industry; Availability*, 85 Fed. Reg. 44305 (July 22, 2020).

[7] Ex. 9, Executive Office of the President, Office of Management and Budget, *Cannabidiol Enforcement Policy; Draft Guidance for Industry; Availability* (July 22, 2020), *available at* https://www.reginfo.gov/public/do/eoDetails?rrid=130894&source=email.

[8] Ex. 10, Division – Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 2020, Congressional Directives, Joint Explanatory Statement, Title IV, at 29, *available at* https://appropriations.house.gov/sites/democrats.appropriations.house.gov/files/HR%201865%20-%20Division%20B%20-%20AG%20SOM%20FY20.pdf (last visited Nov. 16, 2020).

[9] Ex. 11, *A Citizen Petition Requesting FDA Establish a Regulatory Pathway to Legally Market Dietary Supplements Containing Cannabidiol (CBD) by Issuing a Regulation Finding that the Article, CBD, is Lawful* (Nov. 14, 2019), *available at* https://www.chpa.org/PDF/11_14_19_CommentsCBDinDietarySupplements.aspx.

[10] Ex. 12, *Citizen Petition Requesting FDA Establish a Regulatory Pathway to Legally Market Dietary Supplements Containing Hemp-Derived Cannabidiol (CBD)* (June 16, 2020), *available at* https://www.crnusa.org/sites/default/files/Daily/2020-06/CRN-CBD-Citizen-Petition061620.pdf.

5

EAST\177576489.1

dietary supplement.[11]  If enacted, these substances would be classified as "new ingredients" under section 413 of the FDCA once the FDA reviewed information demonstrating the safety of the ingredient and gave its approval.

At the state level, the only states potentially implicated here—California and Florida—are in various stages of developing and implementing CBD laws, regulations, policies, and/or guidance.  The California State Legislature passed and enacted S.B. 153 in October 2019, which governs the cultivation and testing of industrial hemp.  (*See* Ex. 14).[12]  California law does not currently provide any requirements for the manufacturing, processing, or selling of hemp-derived CBD products.  Within the past year, the California State Legislature has considered two bills to establish a regulatory framework for the use of industrial hemp products to be used in food, beverage, or cosmetic products.[13]

Florida also recently enacted a set of rules, which became effective on January 1, 2020.  Rule 5K-4.034(6) regulates the labeling of CBD products and provides that food products containing CBD "must be labeled as required by" the Florida Food Safety Act, § 500.01, Fla. Stat. *et seq.* and applicable FDA regulations. *See* Fla. Admin. Code, Final Rule 5K-4.034(6)(a).  In recent months, the Florida Department of Agriculture and Consumer Services has issued four guidance

---

[11] Ex. 13, H.R. 8179, 116th Cong. (2020).

[12] Ex. 14, S.B. 153, Industrial Hemp, *available at* https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201920200SB153 (last visited Nov. 16, 2020).

[13] Ex. 15, A.B. 228, 2019 Gen. Assemb., Reg. Sess. (Cal. 2019), *available at* https://leginfo.legislature.ca.gov/faces/billHistoryClient.xhtml?bill_id=201920200AB228 (held under submission in August 2019); Ex. 16, A.B. 2028, 2019 Gen. Assemb., Reg. Sess. (Cal. 2020), *available at* http://leginfo.legislature.ca.gov/faces/billStatusClient.xhtml?bill_id=201920200AB2028 (placed on inactive file in Sept. 2020).

EAST\177576489.1

1    documents relating to labeling and testing of hemp products.[14]

2    **III.    ARGUMENT**

3        **A.    The Primary Jurisdiction Doctrine Requires a Stay.**

4        "The primary jurisdiction doctrine allows courts to stay proceedings, or to

5    dismiss a complaint without prejudice pending the resolution of an issue within the

6    special competence of an administrative agency."  *Clark v. Time Warner Cable*,

7    523 F.3d 1110, 1114 (9th Cir. 2008).  It "is a prudential doctrine under which courts

8    may, under appropriate circumstances, determine that the initial decisionmaking

9    responsibility should be performed by the relevant agency rather than the courts."

10   *GCB Commc'ns, Inc. v. U.S. South Commc'ns, Inc.*, 650 F.3d 1257, 1263-64 (9th

11   Cir. 2011).

12       The doctrine is designed to help federal courts adjudicate in instances where

13   "a claim requires resolution of an issue of first impression, or of a particularly

14   complicated issue that Congress has committed to a regulatory agency."  *Id.* at 1264.

15   Accordingly, courts invoke the primary jurisdiction doctrine to "promote judicial

16   economy, reduce confusion and prejudice, and prevent possibly inconsistent

17   resolutions."  *Snyder v. Green Roads of Fla. LLC*, 430 F. Supp. 3d 1297, 1302 (S.D.

18   Fla. 2020) (quoting *Lopez v. Miami-Dade Cty.*, 145 F. Supp. 3d 1206, 1208 (S.D.

19   Fla. 2015)).

20       In determining whether the primary jurisdiction doctrine applies, courts

21   _____

22   [14] Ex. 17, FDACS, *Weights and Measures Considerations for Cannabis, Hemp, and Similar
     Products* (June 22, 2020), *available at*

23   https://www.fdacs.gov/content/download/92033/file/weights-and-measures-considerations-for-
     cannabis-hemp-and-similar-products.pdf; Ex. 18, FDACS, *Hemp Extract and Heavy Metals FAQ*

24   (June 4, 2020), *available at* https://www.fdacs.gov/content/download/91911/file/hemp-extract-
     and-heavy-metals-faq.pdf; Ex. 19, FDACS, *Labeling Guidance for Hemp Food Establishments*

25   (February 3, 2020), *available at*
     https://www.fdacs.gov/ezs3download/download/90799/2581392/Media/Files/Cannabis/labeling-

26   guidance-for-hemp-food-establishments.pptx; Ex. 20, FDACS, *Hemp Food Establishment
     Guidance* (Jan. 1, 2020), *available at* https://www.fdacs.gov/content/download/89947/file/Hemp-

27   Food-Establishment-Guidance.pdf.

28

7

consider four factors: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." *Syntek Semiconductor Co.*, *Ltd. v. Microchip Tech, Inc.*, 307 F.3d 775, 781 (9th Cir. 2002).

Here, each one of these four factors warrants a stay, as detailed below.

### 1.     The FDA and State Regulators Will Decide Material Issues Affecting This Case.

A stay is warranted because several questions that are central to this case will be addressed by the impending federal regulations and the implementation of the state regulations and guidance. First, the labeling of CBD products is a core issue here as Plaintiff alleges that the "[d]efendants' labeling and packaging . . . overstate the quantity of CBD contained in their Products." (FAC ¶ 2). The FDA is in the process of active rulemaking, in conjunction with its own internal CBD Policy Working Group, to develop regulations regarding the packaging and labeling of CBD products. *See* Ex. 4 at 12972. The FDA has already solicited scientific data and input to inform its development of standards applicable to the labeling of CBD products. *See id.* The regulations that Florida has implemented and the legislation that California has considered similarly address or would address the labeling of CBD products, including the labeling requirements regarding CBD content. *See, e.g.*, Final Rule 5K-4.034(6)(a); A.B. 228.

Second, the predicate of Plaintiff's labeling claim is testing that Plaintiff's counsel allegedly performed, which purportedly demonstrated that the CBD content in certain products was below what the label reported. (FAC ¶¶ 2, 20). Currently, there are no uniform standards or guidance for performing CBD testing. The FDA, however, is considering "[w]hat validated analytical testing is needed to support the

8

1    manufacturing of safe and consistent" CBD products.  *See* Ex. 4 at 12972.

2    Moreover, both California and Florida are addressing or expected to address the

3    proper testing of CBD products.  *See* California A.B. 228; Fla. Stat. § 581.217(7).

4    Therefore, "the Court [will] . . .  benefit from the FDA's definitive guidance on the

5    issue."  *Figy v. Lifeway Foods, Inc.*, No. 13-CV-04828, 2014 WL 1779251, at *5

6    (N.D. Cal. May 5, 2014) (granting stay in case involving food labeling); *see also*

7    *Colette v. CV Scis., Inc.*, No. 19-CV-10227, 2020 WL 2739861 (C.D. Cal. May 22,

8    2020) (granting stay in case involving CBD products); *Glass v. Global Widget, LLC,*

9    *d/b/a/ Hemp Bombs*, No. 19-CV-01906, 2020 WL 3174688 (E.D. Cal. June 15,

10   2020) (same).

11        Five stays in CBD labeling putative class actions have already been issued,

12   including two from California district courts.  *Colette*, 2020 WL 2739861, at *5;

13   *Glass*, 2020 WL 3174688, at *4; *Snyder*, 430 F. Supp. at 1309; *Ahumada v. Global*

14   *Widget LLC*, No. 19-CV-12005, 2020 WL 5669032, at *2 (D. Mass. Aug. 11, 2020);

15   *see also Pfister v. Charlotte's Web Holdings*, No. 20-CV-00418, ECF No. 43 (N.D.

16   Ill. Aug. 11, 2020) (stipulated stay issued).  Notably, counsel for Plaintiff here also

17   represented the plaintiffs in both California cases and the *Ahumada* matter.  First, in

18   *Colette*, a case decided in this District, the plaintiffs alleged they would not have

19   purchased products containing CBD if they knew they were not legally sold in the

20   United States.  2020 WL 2739861 at *1.  The defendant moved to stay the action

21   until the FDA "concludes ongoing rulemaking on CBD products."  *Id.* at *4.  In its

22   decision to grant a stay, the court reasoned, "Congress has committed regulation of

23   CBD products to the FDA and expects the agency to publish guidance as soon as

24   possible."  *Id.*

25        A month later, in *Glass*, the defendant moved to stay on primary jurisdiction

26   grounds, and the court agreed; it held that the FDA is "working feverishly to

27   develop rules concerning the regulation of CBD."  2020 WL 42399, at *4 (internal

28

9

citation omitted); *see also Ahumada*, 2020 WL 5669032, at *2 (noting that Senator Mitch McConnell recently "'moved to include report language in the FY2020 appropriations bill requiring the FDA to hasten progress toward regulating the market for CBD products'" (quoting *Snyder*, 430 F. Supp. at 1307, n.2)).  There, the plaintiff alleged that the labels of CBD products manufactured by the defendant misrepresented the amount of CBD contained in the products and asserted eight causes of action, including violations of California consumer protection statutes and false advertising laws and FDUTPA.  *Id.* at *1.

So too here.  A stay is warranted, as in *Colette*, *Glass*, *Snyder*, *Ahumada*, and *Pfister*, because federal and state regulators continue to set standards and guidance for labeling and testing so that there is a clear framework for the Court to analyze this case.  Thus, the first factor weighs in favor of granting the stay.

> ## 2. The FDA Has Jurisdiction Over and Will Subject CBD Products to a Comprehensive Regulatory Scheme Under the FDCA.

A stay is also appropriate here under the second and third factors—whether Congress gave regulatory authority over the issues to an administrative body that provides for a comprehensive regulatory scheme—because the FDCA gives the FDA jurisdiction to subject CBD products to a comprehensive regulatory scheme. The 2018 Farm Bill expressly reserved the FDA's regulatory oversight of hemp consumables under the FDCA to the FDA.  *See* 7 U.S.C. § 1639r(c); *see also Snyder*, 430 F. Supp. 3d at 1308 (as quoted by *Colette*, 2020 WL 2739861, at *5) (the 2018 Farm Bill "explicitly recognized the FDA's authority to regulate products . . . under the FDCA").  And, the FDA is now actively exercising that authority.

Indeed, in granting a stay, the *Colette* Court found that "the FDA appears to be properly exercising their regulatory authority" over CBD products because "the FDA regulates, among other matters, food additives, supplements and nutrients, and

because ingestible CBD products could be deemed to fall into any of these categories, they are within the FDA's jurisdiction."  2020 WL 2739861, at *5 (*quoting Snyder*, 430 F. Supp. 3d at 1308); *see also Greenfield v. Yucatan Foods, L.P.*, 18 F. Supp. 3d 1371, 1376 (S.D. Fla. 2014) (granting stay where plaintiff alleged that defendant mislabeled food as containing evaporated cane juice rather than sugar because "Congress vested the FDA with regulatory authority over food labeling").  The second and third factors therefore weigh in favor of a stay.

### 3. The Regulation of CBD Products Requires Both the FDA's Expertise and Uniformity in Administration.

A stay is also warranted here under the fourth factor because the FDA's expertise is required to assess proper CBD product labeling and testing, and there is a need for uniform administration of the forthcoming rules.  First, as the FDA itself has explained, "[r]egulatory oversight of products containing cannabis or cannabis derived compounds is complex and involves multiple Federal and State agencies."  Ex. 4 at 12970.  The rulemaking process involves soliciting, analyzing, and synthesizing highly technical scientific data from a massive range of sources.  (*See* Ex. 1; Ex. 4 at 1269).  The *Colette* and *Snyder* courts agreed that the FDA's expertise is necessary to decide analogous issues to those presented here because it is addressing such highly technical issues as "whether CBD products pose safety risks, how the mode of delivery affects safety, whether there are dosage considerations related to safety, whether there is a need for manufacturing standards, and whether there are standardized definitions for the ingredients in, for example, hemp oil."  *Snyder*, 430 F. Supp. 3d at 1308.

The need for uniformity in administration also weighs in favor of a stay and courts have routinely granted stays when there is a risk of inconsistent rulings.  "The need for consistent guidance is underscored by the increasing volume of this

NOTICE OF MOTION AND MOTION TO STAY ACTION
CASE NO. 2:20-CV-04829

type of litigation and the concomitant potential for inconsistent judicial rulings." *Greenfield*, 18 F. Supp. 3d at 1376; *see also Colette*, 2020 WL 2739861, at *4 ("[T]he number of CBD class actions currently pending in the federal district courts makes clear the danger of inconsistent adjudications."); *Ahumada*, 2020 WL 5669032, at *2 (same (quoting *Colette*, 2020 WL 2739861, at *4)).  Application of the FDA's uniform approach will also substantially assist the Court in determining the issues in this case, which will both streamline the issues for trial and conserve judicial resources.  *See Gentry v. Cellco P'ship*, No. 05-CV-07888, 2006 WL 6927883, at *7 (C.D. Cal. Mar. 22, 2006) (granting stay in the "interests of judicial economy and efficiency" because the issue was a forthcoming determination by the FCC).

At least three other CBD class actions are pending just in this District alone,[15] and there are four pending in other courts across the country.[16]  The fourth factor therefore weighs heavily in favor of a stay.

A stay pending additional federal and state guidance is unlikely to remain in place for an unreasonable period of time, and there is not a risk of undue delay or prejudice to Plaintiff due to the early stage of the litigation.  As the Court found in *Snyder*, "[g]iven that this case is in the nature of public interest litigation, the delay occasioned by a stay under the current circumstances, would not prejudice Plaintiffs to any significant degree."  430 F. Supp. 3d at 1308; *see also Gentry*, 2006 WL 6927883, at *3 ("[E]quitable arguments such as that a stay will delay the proceeding

---

[15] *DaSilva v. Infinite Prod. Co.*, No. 19-CV-10148 (C.D. Cal. Nov. 27, 2019); *Colette v. CV Scis., Inc.*, No. 19-CV-10227 (C.D. Cal. Dec. 3, 2019); *Davis v. cbdMD, Inc.*, No. 19-CV-10241 (C.D. Cal Dec. 3, 2019).

[16] *Glass v. Global Widget, LLC, d/b/a/ Hemp Bombs*, No. 19-CV-01906 (E.D. Cal. Sept. 18, 2019); *Snyder v. Green Roads of Fla. LLC*, No. 19-CV-62342 (S.D. Fla. Sept. 19, 2019); *Ahumada v. Global Widget LLC, d/b/a Hemp Bombs*, No. 19-CV-12005 (D. Mass. Sept. 24, 2019); *Pfister et al. v. Charlotte's Web Holdings, Inc.*, No. 20-CV-00418 (N.D. Ill. Jan. 17, 2020). The Court may take judicial notice of publicly available court records, including court dockets. *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1116 (C.D. Cal. 2010).

12

1  and increase the plaintiff's injury have been squarely rejected. . . .").

2      For these reasons, the Defendants respectfully submit that the Court stay this

3  action pending further federal and state administrative guidance.

4  **IV.   CONCLUSION**

5      For all the above reasons, respectfully, the Court should grant a stay of the

6  action based on primary jurisdiction.

7

8

9  Dated: November 23, 2020          **DLA PIPER LLP (US)**

10                                   By: /s/ *Isabelle L. Ord*

11                                       ISABELLE L. ORD
                                         ALEXANDER E. WOLF
12                                       ELIZABETH C. CALLAHAN
13                                       Attorneys for Defendants
                                         JUST BRANDS USA, INC., JUST
14                                       BRANDS, INC., and SSGI FINANCIAL
15                                       SERVICES, INC.

16                                       STEFANIE J. FOGEL (*Pro Hac Vice*)
17                                       stefanie.fogel@dlapiper.com
                                         **DLA PIPER LLP (US)**
18                                       33 Arch Street, 26th Floor
19                                       Boston, MA 02110
                                         Tel: 617.406.6000
20                                       Fax: 617.406.6100
21
                                         COLLEEN GULLIVER (*Pro Hac Vice*)
22                                       colleen.gulliver@dlapiper.com
23                                       **DLA PIPER LLP (US)**
                                         1251 Avenue of the Americas
24                                       New York, NY 10020
25                                       Tel: 212.335.4500
                                         Fax: 212.335.4501
26
27
28
                                         13

EAST\177576489.1