Alex R. Straus (CA Bar #321366)
**GREG COLEMAN LAW PC**
16748 McCormick Street
Los Angeles, CA 91436
alex@gregcolemanlaw.com
Telephone: 917-417-1894

Rachel Soffin *(Pro Hac Vice)*
Justin G. Day *(Pro Hac Vice)*
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
greg@gregcolemanlaw.com
rachel@gregcolemanlaw.com
justin@gregcolemanlaw.com

*Attorneys for Plaintiff and Proposed Class*
*[Additional Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL RODRIGUEZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JUST BRANDS USA, INC., JUST BRANDS FL, LLC, JUST BRANDS, INC., JUST CBD, LLC, and SSGI FINANCIAL SERVICES, INC.,<br><br>Defendants. | Case No. 2:20-cv-04829-ODW-PLA<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY THE ACTION**<br><br>Date: January 25, 2021<br>Time: 1:30 p.m.<br>Courtroom: 5D<br>Judge: Hon. Otis D. Wright II |

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................................. iii

I. INTRODUCTION ............................................................................................. 1

II. THE COURT SHOULD NOT STAY THE CASE PURSUANT TO THE PRIMARY JURISDICTION DOCTRINE BECAUSE SUCH CLAIMS ARE NOT WITHIN THE PURVIEW OF THE FDA ................................. 3

    A. The Primary Jurisdiction Doctrine Is Inapplicable Because the FDA And State Regulators Are Not Deciding Material Issues Affecting This Case, And There Is No FDA Jurisdiction Over the CBD Underfill Claims. ................................................................................................. 4

    B. Plaintiff's CBD Underfill Claims Are Not Impacted By Any Potential Forthcoming Regulation Regarding CBD Products. ............................ 12

III. CONCLUSION ............................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**                                                                                                       **Page(s)**

*Ahumada v. Global Widget LLC*, 1:19-cv-12005,
2020 U.S. Dist. LEXIS 177510 (D. Mass 2020) .......................................................... 9

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) .......................... 4

*Ballard v. Bhang Corp.*, 2020 U.S. Dist. LEXIS 188626
(C.D. Cal. Sept. 25, 2020) ................................................................................. 2, 7, 10

*Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166 (9th Cir. 2002) ....... 4

*Clark v. Time Warner Cable*, 523 F.3d 1110 (9th Cir. 2008) .................................... 3

*Colette v. CV Sciences., Inc.*, No. 2:19-cv-10227, 2020 U.S. Dist. LEXIS 93553
(C.D. Cal. May 22, 2020) ........................................................................................... 8

*Dabish v. Brand New Energy, LLC*, 2016 U.S. Dist. LEXIS 167783 (S.D. Cal. Nov. 23, 2016) ................................................................................................................... 13

*Fisher v. Monster Beverage Corp.*, 656 F. App'x 819 (9th Cir. 2016) ...................... 7

*In re 5-hour ENERGY Marketing and Sales Practices Litigation*,
2014 WL 5311272 (C.D. Cal. Sept. 4, 2014) ....................................................... 13-14

*Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889 (N.D. Cal. 2012) .................... 13

*Nat'l Commc'ns As'n, Inc. v. Am. Tel. & Tel. Co.*, 46 F.3d 220 (2d Cir. 1995) ........ 3

*Potter v. Potnetwork Holdings, Inc.*, No. 19-24017, 2020 U.S. Dist. LEXIS 57166
(S.D. Fla. Mar. 27, 2020) ........................................................................................... 6

*Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015) ................................. 7, 13

*Rice-Sherman v. Big Heart Pet Brands, Inc.*, No. 19-cv-03613,
2020 U.S. Dist. LEXIS 46197 (N.D. Cal. Mar 16, 2020) ........................................ 12

*Snyder v. Green Roads of Fla. LLC*, No. 0:19-cv-2342,
2020 U.S. Dist. LEXIS 1145 (S.D. Fla. Jan. 3, 2020) ............................................... 9

*Syntek Semiconductor Co., Ltd. v. Microchip Technology Inc.*,
307 F.3d 775 (9th Cir. 2002) ...................................................................................... 4

*Zakaria v. Gerber Products Co.*, 2015 WL 3827654
(C.D. Cal. June 18, 2015) ........................................................................................ 14

**Statutes and Other Authorities**

Fla. Stat. § 581.216(7) .............................................................................................. 10

Fla. Admin. Code, Rule 5K-4.034(6) ....................................................................... 10

## I.     INTRODUCTION

Plaintiff Miguel Rodriguez hereby files this opposition to Defendants' Motion to Stay the Action ("Motion to Stay"). The grounds for the opposition are numerous, including that (1) the U.S. Food and Drug Administration ("FDA") and California and Florida State Regulators ("State Regulators") are not deciding material issues affecting this case, (2) there is no FDA jurisdiction over Plaintiff's claims, and (3) Plaintiff's claims will not in any way be impacted by any potential forthcoming FDA regulations regarding cannabidiol ("CBD") products.

This is a classic mislabeling case, which alleges that Defendants manufactured, distributed and sold underfilled CBD Products (collectively, the "CBD Products" or "Products"). As alleged in the First Amended Complaint ("FAC"), Defendants' labeling and packaging of the CBD Products are replete with representations and warranties that the products contain specific amount of CBD (the "CBD Underfill Claims") when they do not. *See e.g.* FAC at ¶¶ 2, 6, 20. Contrary to the representations on the CBD Product labels and packaging, the CBD Products contain only a fraction of the CBD represented. *Id.* In fact, according to independent lab testing commissioned by Plaintiff's counsel, some of the CBD Products contain no CBD at all, while others contain an underfill of approximately 51%. *Id.* By misrepresenting the true quantity of CBD in the Products, Defendants are able to charge a substantial price premium on account of these fictitious CBD quantity claims. *Id.* Consequently, Plaintiff and putative Class Members did not receive the benefit of their bargain because

Defendants' CBD Products do not contain anywhere near the quantities of CBD advertised. *Id.*

Despite the nature of Plaintiff's CBD Underfill Claims, Defendants argue that this case should be stayed while the FDA and State Regulators are allegedly considering whether to legalize use of CBD in food products and supplements. Defendants' argument is meritless. Just recently, in *Ballard v. Bhang Corp.*, 2020 U.S. Dist. LEXIS 188626 (C.D. Cal. Sept. 25, 2020), a substantially similar class action involving underfilled and mislabeled CBD products, Judge Bernal rejected the same arguments regarding primary jurisdiction that Defendants make here. According to Judge Bernal, the defendant CBD manufacturer, like Just Brands here, did "not demonstrate[] that possible FDA regulations on the safety of CBD will clarify whether its advertising lines up with its product." *Ballard*, 2020 U.S. Dist. LEXIS 188626 at *12. Judge Bernal denied the CBD manufacturer's motion to stay and correctly reasoned that even though "the FDA is investigating CBD, 'uncertainty' over if or when the FDA might promulgate labeling regulations that would alter this Court's analysis of state-law consumer protection claims counsels against an indefinite stay. *Id*. at *5. The same result should apply here, and Defendants' motion to stay should be denied.

Indeed, while it is disputable whether the FDA or the State Regulators are going to legalize the sale of these CBD Products, such an argument is beside the point. Whether the CBD Products are ultimately legalized has absolutely no impact on this

lawsuit, which seeks compensation for Plaintiff and similarly situated consumers who paid too much for CBD Products that contained less CBD than represented. No rational argument can be made that the FDA or State Regulators' rulemaking processes involves sanctioning the *underfilling* of CBD products, specifically. Thus, even if the FDA or State Regulators legalize CBD products (the undersigned contends they will not), legalizing these products will not simultaneously invalidate the CBD Underfill Claims. There is no scenario in which the FDA and State Regulators will authorize Defendants' deceptive conduct of failing to provide consumers with the amount of CBD represented on the product labels.

**II. THE COURT SHOULD NOT STAY THE CASE PURSUANT TO THE PRIMARY JURISDICTION DOCTRINE BECAUSE SUCH CLAIMS ARE NOT WITHIN THE PURVIEW OF THE FDA**

The primary jurisdiction doctrine permits courts to stay litigation "pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). Thus, the primary jurisdiction doctrine "allows a federal court to refer a matter extending beyond the conventional experiences of judges or falling within the realm of administrative discretion to an administrative agency with more specialized experience, expertise, and insight." *Nat'l Commc'ns As'n, Inc. v. Am. Tel. & Tel. Co.*, 46 F.3d 220, 222–23 (2d Cir. 1995) (citation omitted). However, the primary jurisdiction doctrine "does not require that all claims within an agency's purview be decided by the agency. Nor is it intended to secure expert advice for the courts from regulatory agencies every time a

court is presented with an issue conceivably within the agency's ambit," but instead is to be used only when a claim "requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002).

Whether an action should be stayed pursuant to the primary jurisdiction doctrine is a matter for the Court's discretion. *Syntek Semiconductor Co., Ltd. v. Microchip Technology Inc.*, 307 F.3d 775, 781 (9th Cir. 2002). However, "primary jurisdiction is not required when a referral to the agency would significantly postpone a ruling that a court is otherwise competent to make." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 761 (9th Cir. 2015). Here, given the nature of Plaintiff's mislabeling claims, which the Court is more than competent to address, the primary jurisdiction doctrine should not be invoked in this case.

**A. The Primary Jurisdiction Doctrine Is Inapplicable Because the FDA And State Regulators Are Not Deciding Material Issues Affecting This Case, And There Is No FDA Jurisdiction Over the CBD Underfill Claims.**

This is a classic mislabeling case that does not seek to enforce matters within the jurisdiction of the FDA or State Regulators, and which involves issues that are not in any way being considered by either the FDA or State Regulators. Noticeably absent from Defendants' brief is any argument to the contrary. Instead, Defendants vaguely reference steps the FDA and State Regulators have taken toward CBD regulation and guidance, none of which involves evaluating whether CBD companies can label their products as containing certain amounts of CBD when they actually contain

substantially less CBD than represented. This is no surprise, as the FDA and State Regulators would not foster such deception.

Defendants instead argue, broadly, that the FDA and State Regulators have developed or are in the process of implementing regulations for labeling CBD Products. However, there is not a single government entity, whether the FDA or State Regulators, that is considering – or would ever consider – sanctioning Defendants' conduct of mislabeling the content of its products, preventing consumers from getting the benefit of their bargain.

Defendants' Motion to Stay focuses on what it refers to as "Active and Impending Hemp-CBD Regulation and Guidance," and references multiple exhibits which simply confirm that the FDA is "exploring whether it would be appropriate to make additional regulatory pathways available to hemp products…containing CBD," and that the FDA has been unwavering in its position that it is unlawful to sell any CBD food or purported dietary supplement products in interstate commerce pursuant to the Federal Food, Drug, and Cosmetic Act (FD&C Act). *See* https://www.fda.gov/news-events/congressional-testimony/hemp-production-and-2018-farm-bill-07252019 (last accessed Dec. 16, 2020). There is nothing in the FDA materials addressing Plaintiff's CBD Underfill claims, and there is not an iota of evidence indicating that the FDA is going to boldly allow CBD companies to provide consumers with less CBD than represented on the product labels. Thus, whether the FDA maintains its unrelenting position that CBD products are illegal is of no

consequence here, and Defendants' reference to the FDA's potential CBD regulations is a smokescreen, as several courts have found.

In *Potter v. Potnetwork Holdings, Inc.*, No. 19-24017, 2020 U.S. Dist. LEXIS 57166, at *15-16 (S.D. Fla. Mar. 27, 2020), the defendant sought to stay a similar CBD underfill case, which the court rejected on the basis that any new FDA regulations will not change the fact that manufacturers cannot deceive consumers by stating their products contain certain amounts of CBD when they do not:

> The question for the Court to consider is whether it should exercise its discretion to apply the primary jurisdiction doctrine and stay the case pending the promulgation of the federal regulations described above. Potter argues that the current regulations and guidance regarding labeling are sufficient and that the forthcoming regulations will likely not have any effect on the issues in this case. (ECF No. 27 at 14-16.) She specifically states that "[w]hatever new FDA regulations may come about . . . [they] will not change the fact that manufacturers cannot state that their products contain a certain amount of CBD when they actually contain significantly less." (ECF No. 27 at 17.) The Court agrees.

*Id.* at *15-16.

*Ballard* is also directly on point. There, the defendant sought to stay a CBD underfill case, which the court rejected on the basis that pending FDA guidance regarding CBD products would not impact the court's ability to address the false advertising claims:

> Use of the primary jurisdiction doctrine in food-labeling claims in the Ninth Circuit often turns on whether pending FDA guidance will define an unclear labeling term…
>
> However, the Ninth Circuit has declined to invoke the primary jurisdiction doctrine where the court could address false advertising

> claims without additional FDA clarification. *Reid v. Johnson & Johnson*, 780 F.3d 952, 967 (9th Cir. 2015) ("The issue that this case ultimately turns on is whether a reasonable consumer would be misled by [defendant's] marketing, which the district courts have reasonably concluded they are competent to address in similar cases."); see *Fisher v. Monster Beverage Corp.*, 656 F. App'x 819, 824 (9th Cir. 2016) (unpublished) (primary jurisdiction doctrine did not apply where plaintiffs alleged state-law consumer protection claims over terms that did not require FDA clarification).

*Ballard,* 2020 U.S. Dist. LEXIS 188626*,* at *4.

> Plaintiff has the better argument here. Plaintiff's claims are simple: there is less THC and CBD in Bhang chocolates than advertised, and this discrepancy violates various California consumer protection laws. Whether Plaintiff has pleaded these claims sufficiently is discussed below. But Defendant has not demonstrated that possible FDA regulations on the safety of CBD will clarify whether its advertising lines up with its product.

*Id.* at *12.

Defendants cite to several CBD product class actions that have been stayed, but these actions are inapposite or were stayed for different reasons. As the court in *Ballard* noted, each of "these orders demonstrate why a stay is not appropriate in this case." *Ballard*, 2020 U.S. Dist. LEXIS 188626, at *13-14.

Unlike in this case, which involves simple underfill claims, in *Colette v. CV Sciences., Inc.*, No. 2:19-cv-10227, 2020 U.S. Dist. LEXIS 93553 (C.D. Cal. May 22, 2020) and *Glass v. Global Widget, LLC*, 2020 U.S. Dist. LEXIS 104400 (E.D. Cal. June 15, 2020), the plaintiffs alleged that, pursuant to FDA regulations, it is illegal to sell CBD products as dietary supplements or to sell food with CBD, and that they would not have purchased the products had they known they were being illegally sold.

The courts stayed those cases on the basis that the FDA is evaluating whether it is possible to have legal pathways which address the FDA's longstanding safety concerns regarding CBD products in dietary supplements or in a food. *See Colette v. CV Sciences., Inc.*, No. 2:19-cv-10227, 2020 U.S. Dist. LEXIS 93553 (C.D. Cal. May 22, 2020)[1] ("The crux of this lawsuit is Plaintiffs' allegations that Defendant's products are illegal under the Federal Food, Drug, and Cosmetic Act of 1938, 21 U.S.C. § 301, *et seq* ("FDCA")," and "[e]ach Plaintiff claims that, had she known CBD products are "not legally sold in the United States," she would not have purchased them."); *Glass v. Global Widget, LLC*, 2020 U.S. Dist. LEXIS 104400 (E.D. Cal. June 15, 2020) (plaintiff similarly alleged he was deceived by purchasing CBD products which could not be legally sold).

Further, in *Pfister v. Charlotte's Web Holdings*, No. 20-CV-00418, ECF No. 43 (N.D. Ill. Aug. 11, 2020), cited by Defendants, the parties stipulated to a stay because they disagreed about the meaning of the phrase "hemp extract," and felt FDA guidance

---

[1] The undersigned are counsel in both the *Colette* and *Ahumuda* cases cited herein. To preserve arguments in those cases, although the subject case involves allegations distinct from those in *Colette* and *Ahumuda,* the undersigned asserts that the FDA has consistently remained firm in its position that it is illegal to sell CBD products as dietary supplements or to sell food with CBD, and that it has no plans to legalize any CBD consumer products absent a formal drug approval process. *See* https://www.fda.gov/news-events/public-health-focus/fda-regulation-cannabis-and-cannabis-derived-products-including-cannabidiol-cbd#dietarysupplements. And, even in the highly unlikely event the FDA does make CBD supplements and food with CBD legal, it is certainly not going to do so retroactively, and not in its current forms. If the FDA makes these products legal, and there is no indication that it will, there would inevitably be requirements for warnings, dosage, disclosures regarding usage with other products and side effects, none of which are on any current CBD products. Thus, the CBD products in those cases are and will always be illegal.

on the issue may assist the court in resolving the issue. Thus, *Pfister* has absolutely no relevance here.

In *Snyder v. Green Roads of Fla. LLC*, No. 0:19-cv-2342, 2020 U.S. Dist. LEXIS 1145, at *19-21 (S.D. Fla. Jan. 3, 2020), although the case involved underfill claims, the case turned on "whether the FDA will conclude that some or all CBD products are food additives, supplements or nutrients that can be safely marketed to the public and, if nutrients, whether the labelling standards and requirements for CBD products will be different or the same as for other nutrients..." *Id.* Similarly, in *Ahumada v. Global Widget LLC*, 1:19-cv-12005, 2020 U.S. Dist. LEXIS 177510, at *3-4 (D. Mass 2020), which involved both underfill claims and allegations that CBD products cannot be lawfully sold, the case turned on the court's finding, in part, that the FDA is in the best position to determine whether the CBD products could be lawfully sold and that forthcoming regulations would be of substantial assistance to the court regarding the FDA's general rulemaking in the area.

Although *Snyder* and *Ahumada* involve underfill claims, the rulings in those cases simply address the FDA's general interest in regulating CBD products. However, the FDA is not going to reach the purview of whether CBD companies can fail to deliver the promised amount of CBD in their products and, even if it did, it would certainly never give a green light to such deception. As the FDA recently noted, it is merely "exploring whether it would be appropriate to make additional regulatory pathways available to hemp products such as those containing cannabidiol (CBD)."

*See* https://www.fda.gov/news-events/congressional-testimony/hemp-production-and-2018-farm-bill-07252019 (last accessed Dec. 16, 2020). These regulatory pathways do not include permitting the underfilling of CBD products.

Notably, the court in *Ballard* distinguished and rejected both *Snyder* and *Ahumada,* stating "[t]his court…reads the record presented by Defendants differently than the above two courts did. While the record shows that the FDA is investigating CBD, 'uncertainty' over if or when the FDA might promulgate labelling regulations that would alter this Court's analysis of state-law consumer protection claims counsels against an indefinite stay." *Ballard*, 2020 U.S. Dist. LEXIS 188626, at *15 (citing *Snyder*, 2020 U.S. Dist. LEXIS 1145, at *19-21 and *Ahumada*, 2020 U.S. Dist. LEXIS 177510, at * 4).

Similarly, Defendants' argument that State Regulators are deciding material issues affecting this case is a distractor and does not provide any relevant details. Rather, Defendants' vaguely reference "*regulations* that Florida has implemented" and "legislation that California *has considered,*" which "*would address* the labeling of CBD Products." ECF No. 65, at 8. Defendants do not mention exactly what the Florida regulation and potential California legislation would do, likely because the answer is that they have nothing to do with the present case. California Senate Bill No. 153, Chapter 838, attached as Exhibit 14 to Defendants' motion, is simply intended to bring California hemp laws up to date with federal law, and does not impact Plaintiff's CBD Underfill Claims. Similarly, Rule 5K-4.034(6), codified at 581.217, simply requires a

license for anyone who cultivates hemp or manufactures CBD, and only if they have a certificate of analysis prepared by an independent testing laboratory. This rule has no bearing on Plaintiff's CBD Underfill Claims; and, even if Defendants comply with the testing requirements of this rule (there is no indication that they have), such compliance will still not authorize Defendants' conduct of providing substantially less CBD than represented on the Product labels.

Thus, Defendants' citations to potentially forthcoming FDA regulations, a Florida rule, and potential California legislation are irrelevant to this case, which centers on allegations that Defendants misrepresented that the true quantity of CBD in the CBD Products on the Product labels.

Defendants' argument that Plaintiff's testing should be rejected at the pleadings stage because the FDA is allegedly considering what valid analytical testing is needed to support the manufacturing of safe and consistent CBD Products is an egregious misinterpretation of the FDA's exploration in this area. *See* ECF No. 66, Ex. 4, at 12972. Defendants simply pluck a vague reference in the Notice of Hearing, and expand upon it with absolutely no authority, to argue that the FDA is somehow coming up with a uniform testing protocol for CBD Products. However, the Notice of Hearing indisputably does not discuss any intent of the FDA to come up with uniform standards or guidance for CBD testing in general, or specifically for CBD Underfill Claims. Further, Defendants' attack on Plaintiff's testing is not ripe for resolution at the pleadings stage, where Plaintiffs' allegations are presumed true. Should Defendants

wish to challenge Plaintiff's testing, it can do so following appropriate discovery. *See Rice-Sherman v. Big Heart Pet Brands, Inc.,* No. 19-cv-03613, 2020 U.S. Dist. LEXIS 46197, at *24-25 (N.D. Cal. Mar 16, 2020) (finding allegations of independent testing of pet food products sufficient at pleadings stage).

### B. Plaintiff's CBD Underfill Claims Are Not Impacted By Any Potential Forthcoming Regulation Regarding CBD Products.

As discussed above, the FDA is not evaluating the claims at issue here. Here, the central basis of Plaintiff's claim is that he "did not receive the benefit of his bargain, because Defendants' CBD Products do not contain anywhere near the quantities of CBD advertised." FAC at ¶ 6. There is nothing unique about these claims that require the FDA's expertise, and regulating Defendants' unlawful conduct described herein will not be impacted by any potential forthcoming FDA regulations.

Unlike Defendants' proffered cases and arguments, Plaintiff is not challenging any aspect of FDA governance or the safety of the CBD Products. Additionally, Plaintiff is not claiming the Product labeling and advertising is deceptive because they violate FDA regulations, or contesting whether the CBD Products can be lawfully sold, or whether certain label claims violate FDA disclosure requirements. To the contrary, Plaintiff is simply claiming that Defendants deceptively advertised the content of CBD in their Products, depriving reasonable consumers of the benefit of their bargain under state-law consumer protection claims. Once again, this is a classic mislabeling case which this Court is well suited to address. This Court does not need FDA guidance to

determine whether the CBD Products do not contain the amount of CBD advertised in the Products' labeling and advertising.

Courts in the Ninth Circuit have consistently held that consumer class actions based on unlawful, misleading, or deceptive labeling and advertising are areas the courts can address without the need to "secure [the FDA's] expert advice." *See, e.g., Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 898-99 (N.D. Cal. 2012) (declining to stay the case for FDA regulations about the use of the word "natural" in food marketing: "this case is far less about science than it is about whether a label is misleading. Plaintiff's allegations of deceptive labeling do not require the expertise of the FDA to be resolved in the courts, as every day courts decide whether conduct is misleading. The FDA's expertise is not necessary to determine whether the labels are misleading."); *Reid v. Johnson & Johnson*, 780 F.3d 952, 967 (9th Cir. 2015) ("The issue that this case ultimately determines is whether a reasonable consumer would be misled by McNeil's marketing, which the district courts have reasonably concluded they are competent to address in similar cases."); *Dabish v. Brand New Energy,* LLC, 2016 U.S. Dist. LEXIS 167783, at *12-13 (S.D. Cal. Nov. 23, 2016) ("The FDA has already issued guidance as to what a dietary supplement is and what dietary ingredients may be legally added to a dietary supplement and how …. [Determining if a label is misleading] does not need additional FDA expertise or implicate concerns about uniformity in administration. Therefore, the Court declines to dismiss or stay the action under the doctrine of primary jurisdiction"); *In re 5-hour*

*ENERGY Marketing and Sales Practices Litigation*, 2014 WL 5311272 at *14 (C.D. Cal. Sept. 4, 2014) ("Plaintiff's allegations of deceptive labeling do not require the expertise of the FDA to be resolved in the courts, as every day courts decide whether conduct is misleading .... [T]he mere existence of an agency investigation does not weigh in favor of a referral under the primary jurisdiction doctrine."); *Zakaria v. Gerber Products Co.*, 2015 WL 3827654 at *6 (C.D. Cal. June 18, 2015) (same). Thus, there is neither a substantial risk, nor even a minor, risk of inconsistent rulings across the country regarding Plaintiff's CBD Underfill Claims.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to stay should be denied in its entirety.

Dated: December 21, 2020           Respectfully Submitted,

*/s/ Alex R. Straus*
Alex R. Straus (CA Bar #321366)
**GREG COLEMAN LAW PC**
16748 McCormick Street
Los Angeles, CA 91436
alex@gregcolemanlaw.com
Telephone: 917-417-1894

Rachel Soffin *(Pro Hac Vice)*
Justin G. Day *(Pro Hac Vice)*
**GREG COLEMAN LAW PC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
rachel@gregcolemanlaw.com
justin@gregcolemanlaw.com

|     |     |
| --- | --- |
| 1   | Frederick J. Klorczyk III (CA Bar #320783) |
| 2   | Neal J. Deckant (CA Bar #322946) |
|     | Brittany S. Scott (CA Bar #327132) |
| 3   | **BURSOR & FISHER, P.A.** |
| 4   | 1990 North California Blvd., Suite 940 |
|     | Walnut Creek, CA 94596 |
| 5   | Telephone: (925) 300-4455 |
| 6   | Facsimile: (925) 407-2700 |
|     | fklorczyk@bursor.com |
| 7   | ndeckant@bursor.com |
| 8   | bscott@bursor.com |
| 9   |     |
|     | Jonathan Shub (CA Bar #237708) |
| 10  | Kevin Laukaitis *(Pro Hac Vice)* |
| 11  | **SHUB LAW FIRM LLC** |
|     | 134 Kings Highway East |
| 12  | 2nd Floor |
| 13  | Haddonfield, New Jersey 08033 |
|     | Telephone: (856) 772-7200 |
| 14  | jshub@shublawyers.com |
| 15  | klaukaitis@shublawyers.com |
| 16  | Nick Suciu III *(Pro Hac Vice)* |
|     | **BARBAT, MANSOUR & SUCIU PLLC** |
| 17  | 1644 Bracken Rd. |
| 18  | Bloomfield Hills, MI 48302 |
|     | Telephone: (313) 303-3472 |
| 19  | nicksuciu@bmslawyer.com |
| 20  |     |
|     | *Attorneys for Plaintiff and the Proposed Class* |

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY THE ACTION   15
CASE NO. 2:20-cv-04829-ODW-PLA