ISABELLE L. ORD (Bar No. 198224)
isabelle.ord@dlapiper.com
ELIZABETH C. CALLAHAN (Bar No. 323510)
elizabeth.callahan@dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Tel: 415.836.2500
Fax: 415.836.2501

ALEXANDER E. WOLF (Bar No. 299775)
alexander.wolf@dlapiper.com
**DLA PIPER LLP (US)**
2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, CA 90067
Tel: 310.595.3000
Fax: 310.595.3300

Attorneys for Defendants
JUST BRANDS USA, INC., JUST BRANDS, INC.,
and SSGI FINANCIAL SERVICES, INC.
*[Additional Counsel Listed on Signature Page]*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MIGUEL RODRIGUEZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JUST BRANDS USA, INC., JUST BRANDS, INC., and SSGI FINANCIAL SERVICES, INC.,<br><br>Defendants. | CASE NO. 2:20-CV-04829-ODW-PLA<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY THE ACTION**<br><br>Date:       January 25, 2021<br>Time:       1:30 p.m.<br>Courtroom: 5D<br>Judge:       Hon. Otis D. Wright II |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................... 1

II. ARGUMENT ......................................................................................... 2

    A. The Primary Jurisdiction Doctrine Warrants a Stay. ........................... 2

        1. This Action Is About CBD Labeling and Testing. .................... 2

        2. The FDA is Currently Evaluating CBD Labeling and Testing. 6

        3. Courts Have Overwhelmingly Decided that CBD Mislabeling Claims Should Be Stayed. ....................................................... 8

III. CONCLUSION .................................................................................... 11

# TABLE OF AUTHORITIES

**CASES** Page(s)

*In re 5-hour ENERGY Mktg. & Sales Practices Litig.*,
   No. 13-MDL-02438, 2014 WL 5311272 (C.D. Cal. Sept. 4, 2014) .................. 10

*Ahumada v. Global Widget LLC*,
   No. 19-CV-12005, 2020 WL 5669032 (D. Mass. Aug. 11, 2020)................... 8, 9

*Ballard v. Bhang Corp.*,
   No. 19-CV-02329, 2020 WL 6018939 (C.D. Cal. Sept. 25, 2020)................. 5, 8

*Colette v. CV Scis., Inc.*,
   No. 19-CV-10227, 2020 WL 2739861 (C.D. Cal. May 22, 2020) ...................... 8

*Dabish v. Brand New Energy, LLC*,
   No. 16-CV-00400, 2016 WL 7048319 (S.D. Cal. Dec. 5, 2016)...................... 10

*DaSilva v. Infinite Prod. Co.*,
   No. 19-CV-10148 (C.D. Cal.) ............................................................................... 8

*Davis v. cbdMD, Inc.*,
   No. 19-CV-10241 (C.D. Cal.) ............................................................................... 8

*Forouzesh v. CVS Pharmacy, Inc.*,
   No. 18-CV-04090, 2019 WL 652887 (C.D. Cal. Feb. 15, 2019) (Wright, J.) . 3, 4

*Glass v. Global Widget, LLC*,
   No. 19-CV-01906, 2020 WL 3174688 (E.D. Cal. June 15, 2020)................... 8, 9

*Jones v. ConAgra Foods, Inc.*,
   912 F. Supp. 2d 889 (N.D. Cal. 2012).............................................................. 10

*Moqeet v. Charlotte's Web, Inc.*,
   No. 20-CV-07092 (C.D. Cal.) ............................................................................... 8

*Ochoa v. Church & Dwight Co.*,
   2018 WL 4998293 (C.D. Cal. Jan. 30, 2018) (Wright, J.) .............................. 3, 4

*Pfister v. Charlotte's Web Holdings*,
   No. 20-CV-00418, ECF No. 43 (N.D. Ill. Aug. 11, 2020).............................. 8, 9

*Reid v. Johnson v. Johnson*,
  780 F.3d 952 (9th Cir. 2015) .................................................................................. 10

*Rubio v. Orgain, Inc.*,
  No. 18-CV-02237, 2019 WL 1578379 (C.D. Cal. Mar. 5, 2019) ..................... 3, 4

*Salazar v. Honest Tea, Inc.*,
  74 F. Supp. 3d 1304 (E.D. Cal. 2014) ............................................................. 3, 4

*Snyder v. Green Roads of Fla. LLC*,
  430 F. Supp. 3d 1297 (S.D. Fla. 2020) ......................................................... 5, 8, 9

*Snyder v. Green Roads of Fla. LLC*,
  No. 19-CV-62342, ECF Nos. 25, 35-36 (S.D. Fla. Dec. 31, 2020) ...................... 8

*Zakaria v. Gerber Prod. Co.*,
  No. 15-CV-00200, 2015 WL 3827654 (C.D. Cal. June 18, 2015) .................... 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In their opening brief, Defendants established that the Court should stay this action under the primary jurisdiction doctrine.[1] Specifically, the doctrine warrants regulatory deference because the FDA has jurisdiction over consumable CBD products and is currently evaluating labeling and testing issues that are central to this case. Plaintiff's opposition confirms a stay is the right result.

<u>First</u>, this case is about CBD dosages in the Products—not traditional "underfill" claims as Plaintiff argues. Plaintiff's entire case is dependent upon unspecified testing that was performed by his counsel, which purportedly shows some of the Products' CBD dosages were not as labeled. But Plaintiff does not address precedent finding that FDA labeling and testing regulations are inextricably intertwined with the viability of these types of cases. Indeed, this Court has already held so *twice*, and other courts in the Ninth Circuit have agreed. Applying this precedent here, until the FDA issues its expected CBD guidance, a court cannot properly assess whether Plaintiff has met his pleading burden.

Plaintiff resorts to a straw man argument to avoid this result, contending the pending legalization of consumable CBD products is irrelevant. But Defendants never argued that legalization would be relevant—rather, Defendants explained how the FDA's forthcoming *labeling and testing* regime is critical to evaluating Plaintiff's claims. Plaintiff's own FAC repeatedly emphasizes how CBD product labeling and testing are integral to his dosage-related claims, and he cannot avoid the primary jurisdiction doctrine with a facile attempt at misdirection.

<u>Second</u>, although Plaintiff ignores such evidence, the FDA is actively evaluating CBD labeling and testing. The Agency has said so in cited testimony before the U.S. Senate, in reports to the U.S. House of Representatives, and in

---

[1] Capitalized terms shall have the same meaning as in Defendants' opening brief.

1

formal requests for public comment, just to name a few examples. Included among these statements are highlights of the FDA's sampling and testing plan for CBD consumer products—the latest phase of which is under way through a government contractor handling chemical analyses of CBD dosages.

<u>Third</u>, in the face of a rapidly evolving regulatory landscape (and contrary to Plaintiff's assertions otherwise), courts addressing similar motions have overwhelmingly decided to stay putative class actions involving CBD mis-dosage claims. Moreover, Plaintiff's counsel recently sought to lift one such stay, and was rejected.

For these reasons, the Court should grant a stay of this action based on the primary jurisdiction doctrine.

## II.   ARGUMENT

### A.   The Primary Jurisdiction Doctrine Warrants a Stay.[2]

#### 1.   This Action Is About CBD Labeling and Testing.

The parties agree that "[t]he primary jurisdiction doctrine permits courts to stay litigation 'pending the resolution of an issue within the special competence of an administrative agency.'" (Opp. at 3 (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008))). And yielding to this doctrine is vital if claims involve "an issue of first impression, or of a particularly complicated issue that Congress has committed to [the] agency." (Opp. at 4 (quoting *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002))).

Though Plaintiff likes to describe his claims as "underfill claims" (Opp. at 1), this action challenges the dosage of CBD in products as compared to their labels. Unlike a true underfill or "slack-fill" case—which, for example, might deal with the amount of empty space measured in a potato chip bag or the weight measured for a

---

[2] Defendants dispute all of Plaintiff's dosing or "underfill" allegations and have filed a concurrent motion to dismiss the FAC. A stay based on the primary jurisdiction doctrine is an alternative request to the motion to dismiss.

candy box—a *dosage* case requires scientific expertise in laboratory testing in order to analyze variances with product labels. Even by Plaintiff's own descriptions, this action hinges on his counsel's CBD testing methods, which he has not disclosed. (*See, e.g.*, FAC ¶ 2 (attacking Defendants' labels based on unspecified "testing commissioned by Plaintiff's counsel"); Opp. at 1 (asserting that "[t]his is a classic mislabeling case" due to unspecified "testing commissioned by Plaintiff's counsel")). But CBD testing methods have not yet been standardized in the scientific community or by the FDA, and "inter-laboratory variation is a serious problem." (*See* Reply, Ex. 21[3]).

This Court and many others in the Ninth Circuit have acknowledged that labeling and testing regulations are inextricably intertwined with the viability of mis-dosing claims. *See, e.g.*, *Ochoa v. Church & Dwight Co.*, 2018 WL 4998293 (C.D. Cal. Jan. 30, 2018) (Wright, J.); *Forouzesh v. CVS Pharmacy, Inc.*, No. 18-CV-04090, 2019 WL 652887 (C.D. Cal. Feb. 15, 2019) (Wright, J.); *Salazar v. Honest Tea, Inc.*, 74 F. Supp. 3d 1304 (E.D. Cal. 2014); *Rubio v. Orgain, Inc.*, No. 18-CV-02237, 2019 WL 1578379 (C.D. Cal. Mar. 5, 2019). These cases further weigh in favor of a stay here. Remarkably, while Plaintiff relies upon such precedent to oppose Defendants' concurrent motion to dismiss, he fails to acknowledge its relevance to the motion to stay. (*See* MTD Opp. at 4, 12-13 (citing *Ochoa*, 2018 WL 4998293, at *9)).

In *Ochoa*, a plaintiff filed a putative class action alleging that the labels of multivitamin gummies misstated their actual amount of folic acid. 2018 WL 4998293, at *1. The detection purportedly occurred through unspecified

---

[3] Reply, Ex. 21, Brian C. Smith, *Inter-Lab Variation in the Cannabis Industry, Part I: Problem and Causes*, CANNABIS SCI. & TECH. (April 4, 2019), *available at* https://www.cannabissciencetech.com/view/inter-lab-variation-cannabis-industry-part-i-problem-and-causes; *see also id.* (attributing industry variances to a lack of standard methods, sample inhomogeneity, sample preparation variability, sample instability, large factor dilutions, and human error).

"independent laboratory testing," just as is alleged here. *Id.* This Court dismissed all state law claims because the plaintiff failed to allege that her testing methods complied with preempting FDA food labeling regulations, which required a "random 12-sample composite method." *Id.* at *5-6. To the extent the plaintiff potentially could have amended her claims, this Court also issued a stay based on the primary jurisdiction doctrine because dosage variance allegations "implicat[e] complex technical or policy questions" about product shelf-life and manufacturing practices, and the FDA "indicat[ed] that further research [was] necessary" and "was contemplating additional guidance on the issue." *Id.* at *7-8.

More recently, in *Forouzesh*, a plaintiff brought a putative class action alleging that a sunscreen label overstated the actual amount of SPF in the product. 2019 WL 652887, at *1. This Court again dismissed the complaint because the plaintiff "fail[ed] to plausibly allege that his independent testing [was] FDA-compliant." *Id.* at *4. Even though the plaintiff attached a lab report to his pleading (unlike here), that still was insufficient "because the question of compliance must be determined using a precise and specific methodology." *Id.* at *4-5.

Other courts in the Ninth Circuit agree. In *Salazar*, Plaintiff's firm here filed a putative class action alleging that tea beverages "did not contain the amount of antioxidants represented on their labels," based on purported independent laboratory testing. 74 F. Supp. 3d at 1308. The court dismissed the plaintiff's state law claims because the complaint failed to allege her testing complied with FDA methodology. *Id.* at 1314. Similarly, in *Rubio*, Plaintiff's firm here filed a putative class action alleging that nutrition shakes did not contain the grams of protein represented on labels. 2019 WL 1578379, at *1. That case too was dismissed because the complaint failed to allege compliance with FDA testing methodology—and the court expressly rejected the plaintiff's argument for relaxing this pleading requirement in consumer cases." *Id.* at *3-4.

4

Collectively, this precedent reinforces the need for a stay here. Plaintiff's allegations rest entirely on his undisclosed laboratory testing that purports to demonstrate the dosages of CBD in the Products. (FAC ¶ 2). It is likely that the FDA will issue testing requirements, as it has for other regulated items, which will be directly relevant to whether Plaintiff has stated a claim here.

Plaintiff sets up a straw man argument in an attempt to distract from this inevitable conclusion. (*See* Opening Br. at 8-9; *infra* Part II.A.2). He repeatedly contends that "Defendants argue that this case should be stayed while the FDA . . . consider[s] whether to legalize use of CBD" and, moreover, that "[w]hether the CBD Products are ultimately legalized has absolutely no impact on this [underfill] lawsuit." (Opp. at 2-3 (citing *Ballard v. Bhang Corp.*, No. 19-CV-02329, 2020 WL 6018939, at *5 (C.D. Cal. Sept. 25, 2020)); *see also* Opp. at 5-6 (arguing that the FDA's position on the legal status of CBD "is of no consequence here"); Opp. at 8 n.1 (arguing about implications of CBD's legal status)).

Setting aside the FDA's statement signaling that legalization is likely inevitable,[4] Defendants *never invoked* CBD's legal status as the basis for the stay. Therefore, Plaintiff's reliance upon *Ballard v. Bhang Corp.* for his proposition that one court declined a stay when presented with CBD legality arguments is unavailing. (Opp. at 2 (citing *Ballard*, 2020 WL 6018939, at *5)). As Plaintiff knows—and has expressed in his own words—what this action actually hinges on is CBD labeling and testing. (*See, e.g.*, FAC ¶ 2; Opp. at 1). The FDA's forthcoming national guidance on those issues stands to "promote judicial economy, reduce confusion and prejudice, and prevent possibly inconsistent resolutions." *Snyder v. Green Roads of Fla. LLC*, 430 F. Supp. 3d 1297, 1302 (S.D. Fla. 2020) (quoting

---

[4] *See* Mot., Ex. 5, at 1 (quoting FDA Commissioner as stating it would be a "fool's game" to try to shut down the CBD consumables market).

*Lopez v. Miami-Dade Cnty.*, 145 F. Supp. 3d 1206, 1208 (S.D. Fla. 2015)).[5]  Thus, a stay based on the primary jurisdiction doctrine should be granted.

### 2. The FDA is Currently Evaluating CBD Labeling and Testing.

Plaintiff does not dispute that, in December 2018, Congress preserved the FDA's authority to regulate CBD products.  (*See* Opening Br. at 2-3).  CBD product labeling and testing both fall within the Agency's broad purview, and it is currently developing guidance on those topics.  (*See* Opening Br. at 8-9).  Even more specifically, the FDA is expressly evaluating labeling and testing policies that could influence the outcomes of CBD mislabeling claims.  As Defendants demonstrated before:

- The FDA has requested public comments regarding "[w]hat *validated analytical testing* is needed to support the manufacturing of . . . consistent [CBD] products."  (Mot., Ex. 4, at 12972 (emphasis added)).

- "[The] FDA knows from CBD products it has tested that they may not contain the amount of CBD indicated on a label . . . .  Therefore, [the] FDA must consider questions related to good manufacturing processes for CBD products and potential labeling that might be appropriate."  (Mot., Ex. 1, at 5-6).

- The FDA has requested public comments "about how [CBD] products . . . are marketed, labeled, and sold," including what "information should [the] FDA consider in the labeling of specific product categories of . . . [CBD] products."  (Mot., Ex. 4, at 12972).

---

[5] Beyond the FDA, regulatory frameworks are still being evaluated and developed rapidly at the state level.  For instance, as Defendants showed in their opening brief: (1) California has considered two pieces of legislation within the past year that would govern the use of industrial hemp in consumable products; and (2) Florida has implemented a rule regarding CBD labeling within the last year—Rule 5K4.034(6)—and also issued four extensive guidance documents regarding CBD product labeling and testing in recent months.  (Opening Br. at 6-7).  Plaintiff is wrong to argue that Florida merely requires licensing; it has established labeling and testing parameters.

- The FDA has requested public comments about what "conditions, restrictions, or other limitations might be appropriate to ensure adequate consumer information" exists for CBD products. (Mot., Ex. 4, at 12972).

- "[The] FDA has undertaken its own CBD product testing to better understand the contents and characteristics of currently marketed CBD products." (Mot., Ex. 6, at 4).

- The FDA has, to this end, conducted initial sampling and reviewed studies on "whether the actual CBD content in these products has matched the content described." The Agency has "plans for more comprehensive product sampling . . . a process that is currently ongoing." (Mot., Ex. 6, at 3).

- The FDA has "developed a sampling plan that is divided into two phases: near- and long-term." (Mot., Ex. 6, at 8; *see also* Mot., Ex. 6, at 8-9 (reporting preliminary test results of near-term sampling plan regarding CBD product variances from labels)).

Plaintiff, however, has chosen to ignore this evidence entirely. (*Cf.* Opp. at 5 ("There is nothing in the FDA materials addressing Plaintiff's CBD Underfill claims . . . .")).

Notably, as an extension of these materials and the Agency's publicized sampling plan, during the fall of 2020, the FDA awarded a $1.7 million contract for CBD content testing "in a wide variety of consumer products . . . through analysis by chemical analytical methods to be specified by the FDA." (Reply, Ex. 22).[6] The FDA stated that "[t]hese studies and the analytical information they obtain . . . [will] be used to guide the development of future policy." (*Id.*) It is appropriate to defer to the FDA while this regulatory process is under way.

---

[6] Reply Ex. 22, U.S. General Services Administration, *Collection and Analysis of Products Containing CBD and Cannabinoids*, BETA.SAM.GOV, https://beta.sam.gov/opp/7990bed5f9aa450c9e279ea37de3e1aa/view (last accessed Jan. 11, 2021) (summarizing the FDA's contract solicitation process and providing RFQ download).

### 3. Courts Have Overwhelmingly Decided that CBD Mislabeling Claims Should Be Stayed.

A majority of pending CBD mislabeling class actions have been stayed due to the primary jurisdiction doctrine. At least seven of these actions are currently pending and, so far, courts have stayed four of them.[7] Thus, contrary to Plaintiff's argument (*see* Opp. at 7-9), courts have repeatedly determined that it is appropriate to afford the FDA time to establish standards in this emerging industry—which will promote uniformity when ruling on these matters.

In one of the cases, Plaintiff's counsel here even sought to lift the stay by invoking *Ballard*—but was rejected. *See Ahumada v. Global Widget LLC*, No. 19-CV-12005, ECF Nos. 35-36 (D. Mass.) (Reply, Exs. 23-24). Moreover, *Ballard* is distinguishable. There, the court held that a stay was inappropriate because the "Defendant ha[d] not demonstrated that possible FDA regulations . . . [would] clarify whether its advertising lines up with its product." 2020 WL 6018939, at *5. Defendants here have demonstrated that forthcoming testing guidelines will be relevant (and potentially dispositive). Hence, Defendants respectfully assert that *Ballard* was wrongly decided.

Plaintiff fails to distinguish the analogous stayed cases when he incorrectly argues that not all of them involved dosage or "underfill" claims. (Opp. at 7-9 (citing *Glass*, 2020 WL 3174688; *Ahumada*, 2020 WL 5669032; *Snyder*, 430 F. Supp. 3d 1297; *Pfister*, No. 20-CV-00418, ECF No. 43)). First, although Plaintiff

---

[7] *See Colette v. CV Scis., Inc.*, No. 19-CV-10227, 2020 WL 2739861 (C.D. Cal. May 22, 2020) (stayed); *Glass v. Global Widget, LLC*, No. 19-CV-01906, 2020 WL 3174688 (E.D. Cal. June 15, 2020) (stayed); *Ahumada v. Global Widget LLC*, No. 19-CV-12005, 2020 WL 5669032 (D. Mass. Aug. 11, 2020) (stayed); *Pfister v. Charlotte's Web Holdings*, No. 20-CV-00418, ECF No. 43 (N.D. Ill. Aug. 11, 2020) (stayed); *see also DaSilva v. Infinite Prod. Co.*, No. 19-CV-10148 (C.D. Cal.) (stay decision pending); *Davis v. cbdMD, Inc.*, No. 19-CV-10241 (C.D. Cal.) (stay decision pending); *Moqeet v. Charlotte's Web, Inc.*, No. 20-CV-07092 (C.D. Cal.) (stay decision pending completed briefing). A fifth stay was in effect until last month, when a stayed CBD action was dismissed by stipulation. *See Snyder v. Green Roads of Fla. LLC*, No. 19-CV-62342, ECF Nos. 25, 35-36 (S.D. Fla. Dec. 31, 2020).

1 suggests that *Glass* only involves claims of CBD illegality, there, his *same counsel*
2 alleged a client had "relied on [a]Defendant's labeling representations concerning
3 the quantities of CBD his purchases contained, only to later discover through testing
4 that the products contained . . . less CBD than stated on the label." 2020 WL
5 3174688, at *1.

6 Likewise, *Ahumada* and *Snyder* also involved under-dosage claims.
7 *Ahumada* acknowledged that the FDA was best positioned to determine "whether
8 [the] products are required to contain certain *dosages* of CBD, and how those
9 products should be manufactured, *tested and labeled*." 2020 WL 5669032, at *1
10 (emphasis added). And the plaintiff in *Snyder* alleged "that he relied on the product
11 labels in making his decision to purchase [and] that the product labels
12 misrepresented the amount of CBD that each product contained." 430 F. Supp. 3d
13 at 1300. The court in *Snyder* held that "the exercise of regulatory authority by the
14 FDA over the labelling of ingestible CBD products requires both expertise and
15 uniformity in administration." *Id.* at 1308.

16 Although Plaintiff argues that *Pfister* only involved "the meaning of the
17 phrase 'hemp extract'" (Opp. at 8-9), he again overlooks that a stay resulted from
18 the intersection of under-dosage allegations and the primary jurisdiction doctrine.
19 *See Pfister*, No. 20-CV-00418, ECF No. 1, at ¶ 4 & ECF No. 39, at 17-20 (Reply
20 Exs. 25-26) (complaint alleged the defendant "conceal[ed] that the Products actually
21 contain an amount of hemp extract significantly less than the amount claimed . . . on
22 the product packaging," followed by a request for stay based on the FDA's oversight
23 and pending guidance concerning "cannabis and cannabis-derived compounds").

24 Finally, the cases Plaintiff relies upon to argue that mislabeling allegations do
25 not require FDA advice are all inapposite. (*Cf.* Opp. at 12-14). None of them
26 involved an emerging regulatory landscape that was still under active evaluation by
27 the FDA. Quite to the contrary, they all dealt with longstanding products or ones for
28 which the FDA had already issued clear guidance. *See Jones v. ConAgra Foods,*

1  *Inc.*, 912 F. Supp. 2d 889, 893 (N.D. Cal. 2012) (dealing with decades-old grocery
2  products like "PAM cooking spray, Hunt's canned tomato products, and Swiss Miss
3  cocoa"); *Reid v. Johnson v. Johnson*, 780 F.3d 952, 955, 966 (9th Cir. 2015)
4  (dealing with a vegetable oil-based spread and finding "no issues of first impression,
5  as the FDA ha[d] already addressed the substantive issues raised here . . . . over a
6  decade" earlier); *Dabish v. Brand New Energy, LLC*, No. 16-CV-00400, 2016 WL
7  7048319, at *5 (S.D. Cal. Dec. 5, 2016) (dealing with fitness supplements and
8  observing that "[t]he FDA has already issued guidance"); *Zakaria v. Gerber Prod.*
9  *Co.*, No. 15-CV-00200, 2015 WL 3827654, at *6 (C.D. Cal. June 18, 2015) (dealing
10 with infant formula and noting the FDA had already assessed the product's health
11 claims); *see also In re 5-hour ENERGY Mktg. & Sales Practices Litig.*, No. 13-
12 MDL-02438, 2014 WL 5311272, at *14-15 (C.D. Cal. Sept. 4, 2014) (dealing with
13 an energy supplement and finding that the FDA investigation of a defendant was not
14 shown to conflict "with the FDA's uniform administration of federal labeling
15 laws").

## III. CONCLUSION

For all the reasons set forth above, Defendants respectfully request that the Court stay this action based on the primary jurisdiction doctrine.

Dated: January 11, 2021        **DLA PIPER LLP (US)**

By: /s/ *Isabelle L. Ord*
    ISABELLE L. ORD
    ALEXANDER E. WOLF
    ELIZABETH C. CALLAHAN
    Attorneys for Defendants
    JUST BRANDS USA, INC., JUST BRANDS, INC., and SSGI FINANCIAL SERVICES, INC.

STEFANIE J. FOGEL (*Pro Hac Vice*)
stefanie.fogel@dlapiper.com
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110
Tel: 617.406.6000
Fax: 617.406.6100

COLLEEN CAREY GULLIVER (*Pro Hac Vice*)
colleen.gulliver@dlapiper.com
CASSANDRA BECKMAN WIDAY
(*Pro Hac Vice Application Forthcoming*)
cassandra.beckmanwiday@dlapiper.com
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, NY 10020
Tel: 212.335.4500
Fax: 212.335.4501